Case 4:25-cr-00404   Document 1   Filed on 07/30/25 in TXSD   Page 1 of 9

United States Courts
Southern District of Texas
FILED

*July 30, 2025*

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEREK MCCOY,<br>DEENA HIGGINBOTHAM, and<br>JOHN MONTGOMERY | CRIMINAL No.   **4:25-cr-404** |

# INDICTMENT

THE GRAND JURY CHARGES:

## General Allegations

At all times material to this Indictment:

1. DEREK MCCOY ("MCCOY") worked at North Water District Laboratory Services, Inc. ("NWDLS") for 30 years, most recently as Chief Executive Officer, and was terminated in or around May 2024.

2. DEENA HIGGINBOTHAM ("HIGGINBOTHAM") has been the Director of Client Services at NWDLS since around April 2022.

3. JOHN MONTGOMERY ("MONTGOMERY") was a Compliance Coordinator for Company A from approximately 2007 until he was terminated in 2024. As Compliance Coordinator, MONTGOMERY oversaw the management of more than two dozen water boards.

4. NWDLS was a business in Conroe, Texas that provided laboratory analysis, including wastewater testing, for engineering firms, municipalities, school districts, government agencies, industrial facilities, and individuals in the Greater Houston area. As part of this

laboratory analysis, NWDLS tested samples to ensure that the treated water did not exceed allowable limits for microorganisms, other pollutants, and additional water quality criteria.

5. Company A was a business in Cypress, Texas that provided water utility operation services to municipal utility boards and wastewater treatment facilities.

## COUNT ONE

### (18 U.S.C. § 371 - Conspiracy)

6. Beginning in or around February 2021 and continuing through in or around January 2024, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, the Defendants,

**DEREK MCCOY,
DEENA HIGGINBOTHAM, and
JOHN MONTGOMERY**

did knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, namely:

a. to knowingly make false material statements, representations, or certifications in records, reports, or other documents filed or required to be maintained under the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA")), 33 U.S.C. § 1251 *et seq.*, in violation of 33 U.S.C. § 1319(c)(4).

### Manner and Means of the Conspiracy

It was part of the conspiracy that:

7. Under section 301(a) of the CWA, 33 U.S.C. § 1311(a), the discharge of a pollutant into waters of the United States is only lawful if done in compliance with an appropriate permit. Permits for the discharge of treated wastewater, such as the ones at issue in

2

this investigation, are granted under the United States Environmental Protection Agency's ("EPA") National Pollutant Discharge Elimination System or an equivalent state program in a state authorized by the EPA. 33 U.S.C. § 1342(b). The State of Texas is so authorized and TCEQ issues such permits under the Texas Pollutant Discharge Elimination System. The United States retains enforcement authority for violations of the CWA and TCEQ permits in Texas.

8. TCEQ grants permits to wastewater treatment facilities ("WWTF") that allow for the discharge of treated wastewater from a WWTF to a receiving body of water. These permits impose limits on the concentrations of certain pollutants, including ammonia, *E. coli*, and phosphorus, that may be discharged and require the regular testing of effluent samples to monitor compliance. The CWA and the TCEQ permits require that the results of this testing be filed with TCEQ and the EPA. Additional information, including the specific oxygen uptake rate of sludge accumulated at a WWTF, must be retained by certain facilities for a period of years.

9. NWDLS provided treated wastewater sampling and testing services to WWTFs. Tests results were automatically captured into NWDLS's electronic laboratory information management system and then reviewed for accuracy by employees of NWDLS. The laboratory information management system would also automatically generate an "exceedance report" when test results exceeded certain pollutant concentration limits in a WWTF's permit. NWDLS would then provide test results and exceedance reports to clients, including Company A, who would review and note any issues. Clients, including Company A, would then file certain information with TCEQ and EPA and maintain other data, as required by the CWA and the TCEQ permits.

10. NWDLS served as Company A's exclusive laboratory for sampling and testing treated wastewater for approximately 22 years until Company A terminated the relationship on or around June 1, 2024. Company A and its clients collectively paid approximately $1.5 million annually to NWDLS for these services. As the Compliance Coordinator, MONTGOMERY was one of Company A's employees primarily responsible for communicating with NWDLS.

11. Beginning in or around 2021, HIGGINBOTHAM, MCCOY, and MONTGOMERY communicated via email, telephone, and electronic text messages to identify test results that needed alteration. MCCOY and HIGGINBOTHAM would then use an electronic remote desktop program and another database to alter particular test results without creating an auditable record in NWDLS's laboratory information management system. Such alterations were falsely made outside of NWDLS and Company A's legitimate review process.

12. After MCCOY and HIGGINBOTHAM altered a particular result in the laboratory information management system, the false result would then be transmitted to Company A and then filed with TCEQ and EPA (in the case of concentrations of certain pollutants) or maintained by the WWTF (in the case of the specific oxygen uptake rate of sludge accumulated at a WWTF).

## Overt Acts of the Conspiracy

In furtherance of the conspiracy and to achieve the objects thereof, at least one of the coconspirators committed or caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

13. On or about February 9, 2021, MCCOY knowingly altered test results to falsely lower within permitted limits the *E. coli* concentration in a sample of treated wastewater

collected from a Fort Bend County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

14. On or about February 12, 2021, MCCOY knowingly altered test results to falsely lower within permitted limits the *E. coli* concentration in a sample of treated wastewater collected from a Montgomery County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

15. On or about March 9, 2021, MCCOY knowingly altered test results to falsely lower within permitted limits the *E. coli* concentration in a sample of treated wastewater collected from a Harris County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

16. On or about March 18, 2021, MCCOY knowingly altered test results to falsely lower within permitted limits the ammonia concentration in a sample of treated wastewater collected from a Harris County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

17. On or around March 19, 2021, MCCOY provided HIGGINBOTHAM with an electronic hyperlink and detailed instructions to access NWDLS's laboratory information management system through a "backdoor" that allowed users to alter wastewater test results without creating a standard audit trail.

18. On or about April 16, 2021, MCCOY and HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the *E. coli* concentration in a sample of treated wastewater collected from a Harris County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

19. On April 20, 2021, MONTGOMERY sent MCCOY an electronic text message stating that the water discharge monitor report for a Comal County WWTF was due at midnight and indicated that the results of the water testing needed to be changed. MCCOY responded, "Let me see what I can do."

20. On or about April 20, 2021, MCCOY knowingly altered test results to falsely lower within permitted limits the phosphorous concentration in the sample of treated wastewater collected from the Comal County WWTF. MCCOY then emailed these altered test results to MONTGOMERY and caused such material false information to be included in a report filed under the CWA.

21. On or about April 21, 2021, MCCOY and HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the *E. coli* concentration in a sample of treated wastewater collected from a Harris County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

22. On September 1, 2022, MONTGOMERY sent an electronic text message to MCCOY that stated, "E. coli exceedances of 2420" and listed three Harris County WWTFs and an unknown WWTF, all serviced by Company A, and the dates samples of treated wastewater were collected whose *E. coli* concentrations exceeded 2420 "Most Probable Number" / 100mL from each of the WWTFs.

23. On or about September 7, 2022, HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the *E. coli* concentrations in the samples of treated wastewater collected from each of the three Harris County WWTFs identified by MONTGOMERY in his September 1, 2022, electronic text message to MCCOY, and one

additional Harris County WWTF serviced by Company A, and caused such material false information to be included in reports filed under the CWA.

24. On or about October 11, 2022, HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the *E. coli* concentration in a sample of treated wastewater collected from a Harris County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

25. On or about February 2, 2023, HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the specific oxygen uptake rates in samples of treated wastewater collected from four Harris County WWTFs, two Montgomery County WWTFs, and one Fort Bend County WWTF, all serviced by Company A, and caused such material false information to be included in reports required to be maintained under the CWA.

26. On or about February 20, 2023, HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the specific oxygen uptake rates in samples of treated wastewater collected from four Harris County WWTFs, all serviced by Company A, and caused such material false information to be included in reports required to be maintained under the CWA.

27. On or about March 3, 2023, HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the specific oxygen uptake rates in samples of treated wastewater collected from five Harris County WWTFs and one Montgomery County WWTF, all serviced by Company A, and caused such material false information to be included in reports required to be maintained under the CWA.

28. On or about June 9, 2023, HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the *E. coli* concentration in a sample of treated wastewater collected from a Harris County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

29. On or about June 20, 2023, MCCOY and HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the *E. coli* concentration in a sample of treated wastewater collected from a Harris County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

30. On or about August 14, 2023, MCCOY and HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the *E. coli* concentration in a sample of treated wastewater collected from a Harris County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

31. On or about August 22, 2023, HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the ammonia concentration in a sample of treated wastewater collected from a Harris County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

32. On or about December 22, 2023, MCCOY and HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the *E. coli* concentration in a sample of treated wastewater collected from a Harris County WWTF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

33. On or about January 10, 2024, HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the *E. coli* concentration in a sample of treated

wastewater collected from a Harris County WTFF serviced by Company A and caused such material false information to be included in a report filed under the CWA.

34.  On or about February 14, 2024, HIGGINBOTHAM knowingly altered test results to falsely lower within permitted limits the specific oxygen uptake rate in a sample of treated wastewater collected from a Hays County WWTF serviced by Company A and caused such material false information to be included in a report required to be maintained under the CWA.

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL:

Original Signature on File
_____
FOREPERSON OF THE GRAND JURY


NICHOLAS J. GANJEI
UNITED STATES ATTORNEY

*[signature]*

STEVEN T. SCHAMMEL
Assistant United States Attorney

NATHAN H. STOPPER
Special Assistant United States Attorney